**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| OBIE RADICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CV0458 AGF |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This action is before the Court[1] for judicial review of the final decision of the

Commissioner of Social Security finding that Plaintiff Obie Radica was not disabled and,

thus, not entitled to disability insurance benefits under Title II of the Social Security Act,

42 U.S.C. §§ 401-434.  For the reasons set forth below, the decision of the Commissioner

shall be reversed and the case remanded for further development of the record.

Plaintiff, who was born on July 28, 1968, filed an application for disability

benefits on July 19, 2006, at the age of 38, alleging a disability onset date of July 12,

2006, due to pain in his back, legs, and shoulders, and a childhood history of cerebral

palsy.  (Tr. 52, 72.)  The record suggests that Plaintiff previously had been granted

childhood disability benefits ("CDB") on his father's account, due to cerebral palsy.  Id.

at 54, 68, 77.

---

[1]    The parties have consented  to the exercise of authority by the undersigned
United States Magistrate Judge under 28 U.S.C. § 636(c).

After Plaintiff's current application was denied at the initial administrative level, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on August 7, 2007, at which Plaintiff was not represented by counsel. By decision dated November 15, 2007, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform his past relevant work as a sales clerk. Plaintiff's request for review by the Appeals Council of the Social Security Administration ("SSA") was denied on February 7, 2008. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff argues that (1) Plaintiff's waiver of the right to counsel at the hearing was not valid, (2) the ALJ failed in his duty to develop the record by not ordering a consultative mental examination of Plaintiff, and (3) the ALJ's assessment of Plaintiff's RFC was improper as it was not based on any medical evidence of Plaintiff's functional abilities. Plaintiff requests that the ALJ's decision be reversed and that the case be remanded for the award of benefits or for further evaluation.

## BACKGROUND

### Work History and Application Form

On a work history form, Plaintiff wrote that he had worked from November 1991 to February 1992 for Globe Drug Store on the sales floor, and from October 1993 to July 2006 for Hoods Discount Home Center ("Hoods") in shipping and receiving. Id. at 96. Plaintiff's earnings records show minimal earnings in 1992 and 1993; earnings of

approximately $11,000 in 1994, increasing to approximately $33,000 in 2005, with the exception of 2000, for which no earnings are shown; and earnings in 2006 of approximately $18,000. Id. at 58.

In a report entitled "Disability Report - Field Office," completed by an SSA representative on July 21, 2006, based upon a face-to-face interview with Plaintiff, the interviewer observed that Plaintiff walked with a limp, and that the fingers of his right hand were crooked and splayed, although he had a grip with that hand. The interviewer also observed, "[Plaintiff] conversed easily but I feel he is probably in a lower i.q. level." Id. at 67-70.

According to a "Disability Report - Adult" form dated July 28, 2006, and also completed by an SSA representative, Plaintiff claimed that his ability to work was limited due to pain in his back, legs, and shoulder. Plaintiff reported that he was born with his right leg shorter than his left, and a condition that caused his right hand and fingers to be deformed, and that these conditions had worsened over time, causing continuous pain and making it difficult for him to lift, carry, or walk for long periods of time. Plaintiff claimed that he became unable to work due to these impairments on July 12, 2006, and also that he stopped working on that date because he was laid off by his employer. Plaintiff reported that he had worked as a "sales clerk, shipping/receiving" from 1992 to July 2006, waiting on customers and loading and unloading building materials. At this job, he walked, stood, handled and grasped big and small objects, and reached, each for four hours in a workday; lifted materials weighing up to 100 pounds and frequently lifted 25 pounds; and stooped

and knelt, each for two hours a day.  In the "Remarks" section of this form, the SSA

representative wrote that Plaintiff had received CDB which were terminated due to

substantial gainful activity ("SGA"), and which had "carried [a] diagnosis of mental

retardation," although Plaintiff denied ever receiving special education.  Id. at 71-77.

In a "Function Report - Adult" form dated August 6, 2006, Plaintiff indicated that

he lived alone in a house.  He wrote that he did "Nothing" all day, but in other sections of

the report he indicated that he took care of his personal needs; shopped weekly; cooked his

own meals weekly; performed household chores, including cleaning, laundry, ironing,

mowing, and repairs; went out every day; and spent every Sunday going out to eat or shop

with his two children.  He stated that he did not drive due to his cerebral palsy, and that

when he wanted to get places, he walked or used public transportation.  Plaintiff indicated

that his physical impairments affected such things as lifting, walking, and using his hands,

and that he could only lift about ten to 15 pounds and walk about one mile.  He also

indicated that he could follow written and spoken instructions and could handle stress and

changes in routine.  Plaintiff wrote that a June 2006 accident "really affected" his ability

to do what he needed to do, that as he got older, his body got weaker due to his cerebral

palsy, and that the accident made his back worse.  Id. at 78-86.

**Medical Record**

From 1973 to 1980, Plaintiff was treated for cerebral palsy, right hemiplegia (loss

of motor function) with mixed athetoid and spastic components, and leg length

discrepancy with the right leg being shorter than the left.  Id. at 99-107.  On June 23,

2006, Plaintiff was seen at the emergency room after being in a motor vehicle accident in which he was a passenger in a car that was side-swiped by a bus.  Plaintiff was diagnosed with right shoulder strain and was released.  Id. at 115-22.  He was seen for follow-up on July 5, 2006, and was released to return to work, with no restrictions noted.  Examination notes indicated that Plaintiff had normal judgment and memory, and no barriers to learning.  Id. at 108-14.

From July 31 through November 27, 2006, Plaintiff was treated by Richard J. Davis, D.C., for the injuries sustained in the accident.  When Plaintiff presented for treatment, Dr. Davis diagnosed subluxations, minor malposition of several spinal vertebrae, and hypertonic muscles at the right shoulder and low back.  Id. at 139.  An MRI dated October 24, 2006, showed mild degenerative disc desiccation and disc space narrowing at L3-4, with a mild broad-based disc bulge and flattening of the thecal sac.  Id. at 124.

On October 25, 2006, Plaintiff was admitted to the hospital for chest pain.  The assessment included acute coronary syndrome, coronary artery disease, and possible hyperlipidemia.  Id. at 126-38.  The record suggests that at around this time, Plaintiff had a coronary thrombectomy (a procedure used for the removal of a blood clot from blood vessels, performed in conjunction with a cardiac catheterization).  Id. at 139, 143, 145.

Dr. Davis released Plaintiff from treatment on November 27, 2006, reporting that Plaintiff's shoulder and back pain had been reduced to the level of "maximum medical improvement."  Id. at 139.

**Evidentiary Hearing (Tr. 20-28)**

The letter from the SSA dated August 15, 2006, informing Plaintiff that his claim for benefits had been denied at the initial administrative level, told him that he could request a hearing before an ALJ and that if he did so, he could have a "friend, lawyer, or someone else" help him. The letter continued as follows: "There are groups that can help you find a lawyer or give free legal advice if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal." Id. at 34.

The SSA wrote Plaintiff again on November 20, 2006, acknowledging his request for a hearing, and telling him that he would be sent a notice of its time and place. This letter told Plaintiff that he could choose to be represented by a lawyer or other person, and that a representative could help him get evidence, prepare for the hearing, and present his case at the hearing. The letter further explained that some private lawyers charged a fee only if Plaintiff received benefits, and some organizations might be able to represent him free of charge. The letter stated that a list of groups that could help him find a representative was enclosed. Id. at 36.

A letter to Plaintiff dated July 11, 2007, informed him that his hearing had been set for August 7, 2007, and again told him that he could choose to have a person represent him. Id. at 40. On the date of the hearing, Plaintiff signed a Waiver of Right to Representation form which consisted of a four-question checklist. The questions, and the answers given by Plaintiff were as follows:

6

Q: Do you understand your right to be represented at the hearing today?
A: No.

Q. Did you have a representative for your hearing today?
A. No

Q: Did you have any questions about representation rights?
A: Yes.

Q: Do you want to proceed with the hearing today without a representative?
A: Yes.

Id. at 51.

At the beginning of the hearing, the following exchange took place between the

ALJ and Plaintiff:

ALJ: You're here today with[out] a lawyer. Is that right?
PLAINTIFF: Yes, I was told I didn't need a lawyer.
ALJ: Well, I don't know what you were told, but you were sent a letter from our office describing your rights to have a lawyer. Did you not?
PLAINTIFF: Yes, I think I did. But I went down to Social Security about two months ago, actually, two-and-a-half months ago, and they told me I didn't need a lawyer. She told me I didn't need a lawyer.
ALJ: Did you read the letter as far as your right to have a lawyer if you wanted one?
PLAINTIFF: Yes. Yes, I did. But I went down to –
ALJ: Did you understand that letter?
PLAINTIFF: Not really. No, I definitely –
ALJ: Is that why you went down to Social Security?
PLAINTIFF: That's why I went down to Social Security.
ALJ: Is it your attempt to proceed today without a lawyer, or do you want some more time to get a lawyer?
PLAINTIFF: Well, I'm going to have to get a lawyer. I'm going to have to get a lawyer then.
ALJ: Well, I didn't say you had to get a lawyer, but it's just a question of whether you feel you're able to represent yourself today or whether you want an attorney.
PLAINTIFF: If I can represent myself today, I would like to. But if I –
ALJ: No, you don't have to get a lawyer.

PLAINTIFF: Okay. I'm sorry.
ALJ: Is that what you want to do today?
PLAINTIFF: Yes, sir.

The ALJ then proceeded to question Plaintiff about his past work. Plaintiff stated that he had worked as a sales clerk for a variety store for about three months and for Hoods home center for about 13 years. When asked if he had also worked somewhere in shipping and receiving, Plaintiff recalled that he had once worked at a restaurant. The ALJ tried to clarify what shipping and receiving meant and Plaintiff interposed that the only two places he had worked were the variety store and Hoods.

Plaintiff testified that he had a motor vehicle accident while on work time for the discount home center on June 23, 2006, went back to work on July 5, 2006, upon medical release by a doctor, and was then fired on July 15, 2006. He stated that he was told that he was fired because he had made a mistake in giving a customer a discount, but that this was a lie and he knew he was fired because "they wanted to get rid of me" due to the accident. Plaintiff said that he had a pending worker's compensation claim related to the accident.

The ALJ noted that Plaintiff's arm seemed to be "a little bit stiff," and asked Plaintiff what the problem was. Plaintiff replied that he had been born with cerebral palsy for which he had been treated at the hospital until about the age of 13. Plaintiff testified that his condition got worse and worse every year, that he could hardly pick things up anymore, that his shoulder and hands hurt, that his right leg gave out every morning when he got out of bed, and that he could hardly walk or stand on his feet.

8

Plaintiff acknowledged that the only treatment he received after the June 2006 accident was chiropractic treatment for back pain and shoulder swelling, until the end of November 2006. Plaintiff acknowledged that the chiropractor did not refer him to a pain clinic or orthopedic surgeon. He stated that when he was released for work in early July 2006 after the accident, he felt that he was able to go back to work. When asked how his condition had changed since then, Plaintiff again stated that he could hardly lift anything anymore, that his back hurt, and that he just could not "do it no more." The ALJ asked if there was anything else he should know about Plaintiff's condition, and Plaintiff replied in the negative. The ALJ stated that he would get the records of Plaintiff's MRI from the hospital that had treated Plaintiff as a child for his cerebral palsy, and the hearing came to a close, having lasted 13 minutes.

**Post-hearing Evidence**

On September 13, 2007, Plaintiff established care with Tonya Little, M.D. He complained of back, leg, and shoulder pain, for which he was taking no medications at the time. He also reported recent intermittent chest pain for which he was taking Prilosec (used for heartburn relief). Plaintiff denied dyspnea on exertion, palpitations, and pedal edema. Dr. Little noted that Plaintiff appeared healthy and in no apparent distress, and that he had not followed up with a cardiologist. On examination of the spine, ribs, and pelvis, Dr. Little noted that rotation was severely reduced bilaterally and that extension was moderately reduced. Straight leg raisings (test to determine whether a patient with low back pain has an underlying herniated disk) were positive bilaterally. Dr. Little

diagnosed intervertebral disc disorder, for which she prescribed Hydrocodone, Naprosyn, and Cyclobenzaprine; and coronary artery disease.  Id. at 145-48.

**ALJ's Decision of November 16, 2007 (Tr. at 9-15)**

The ALJ first found that Plaintiff had been informed of his right to representation and that he chose to appear and testify without the assistance of an attorney or other representative.  The ALJ noted that Dr. Little's report had been admitted into evidence. The ALJ next determined that Plaintiff  had the severe impairments of residuals of infantile cerebral palsy, coronary artery disease, and degenerative disc disease of the lumbar spine, but that these impairments, singly or in combination, did not meet or medically equal the severity requirements of a deemed-disabling impairment listed in the Commissioner's regulations.

The ALJ then determined that Plaintiff had the RFC to occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, sit for six hours in an eight-hour workday, stand/walk six hours in an eight-hour workday, occasionally stoop and crouch, and push/pull consistent with his lifting limitations.  The ALJ also determined that Plaintiff had no non-exertional limitations.  In support of this RFC assessment, the ALJ noted that Plaintiff had a "relatively limited history of medical treatment," which was inconsistent with severe and disabling symptoms.  In addition, the record did not contain any opinions from treating or examining physicians indicating that Plaintiff had any limitations greater than those reflected in the ALJ's assessed RFC.  The ALJ noted that although the daily activities reported by Plaintiff on the July 28, 2006 Function Report might not represent a

complete range of daily activities, they were inconsistent with a severely reduced range of activities and with Plaintiff's representation on the form that he did "nothing" all day long.

The ALJ believed that two factors weighed against finding that Plaintiff's allegations of limited daily activities were "strong evidence" of disability – the allegedly limited activities could not be objectively verified, and it was difficult to attribute them to Plaintiff's medical condition in view of the limited medical evidence. The fact that Plaintiff was not taking any pain medication weighed against Plaintiff's credibility, while his good work history weighed in his favor. The ALJ stated that "one of many" factors he took into consideration in assessing Plaintiff's credibility and RFC was Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing." According to the ALJ, Plaintiff displayed no evidence of pain or discomfort and had no difficulty understanding or responding to the questions posed to him. In sum, the ALJ concluded that Plaintiff's subjective complaints were credible only to the extent of the limitations found by the ALJ, and that these limitations did not preclude Plaintiff from returning to his past relevant work as a retail sales clerk. The ALJ noted that on the Disability Report - Adult, Plaintiff stated that from 1992 to July 2006, he worked as a sales clerk and in shipping/receiving, but that at the hearing, Plaintiff testified that he only worked as a sales clerk during that period of time.

In seeking administrative review of the ALJ's decision, Plaintiff did not raise the matter of his lack of representation at the hearing, or of the ALJ's failure to find a mental impairment. Id. at 5.

**DISCUSSION**

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision so long as it "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" <u>Pate-Fires v. Astrue</u>, 564 F.3d 935, 942 (8th Cir. 2009) (quoting <u>Ford v. Astrue</u>, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." <u>Id.</u> (citation omitted). In reviewing the record, the court "must consider both evidence that supports and evidence that detracts from the Commissioner's decision." <u>Id.</u> Reversal is not warranted, however, "as long as the ALJ's decision falls within the 'available zone of choice.'" <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (2008) (citation omitted). The decision of the ALJ is not outside the 'zone of choice' simply because a reviewing court might have reached a different conclusion had it been the initial trier of fact. <u>Id.</u> Rather, "if after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." <u>Owen v. Astrue</u>, 551 F.3d 792, 798 (8th Cir. 2008) (citation omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity which exists in the national economy, by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for

not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  Both the impairment and the inability to engage in substantial gainful employment must last or be expected to last for not less than 12 months.  Barnhart v. Walton,  535 U.S. 212, 217-22 (2002).

The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If so, benefits are denied.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  A special technique is used to determine the severity of mental disorders.  This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  Id. § 404.1520a(c) (3).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied.  If the impairment, or combination of impairments, is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to any of the presumed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant is able to perform his past relevant work, he is not disabled.  If he cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to

demonstrate that the claimant retains the RFC to perform other jobs that exist in significant numbers in the national economy, consistent with the claimant's vocational factors -- age, education, and work experience.

If a claimant can perform the full range of work in a particular exertional category of work (heavy, medium, light, and sedentary) listed in the Commissioner's regulations, the Commissioner may carry this burden by referring to the Guidelines, which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional abilities. Where a nonexertional impairment such as pain or a mental disorder significantly limits the claimant's ability to perform the full range of work in a particular category, the Commissioner cannot carry this burden by relying exclusively on the Guidelines, but must consider testimony of a vocation expert ("VE") on the availability of jobs that a person with the claimant's RFC and vocational factors could perform. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006).

**Plaintiff's Waiver of the Right to Representation at the Hearing**

Plaintiff argues that the record reflects confusion on Plaintiff's part as to his right to have counsel at the evidentiary hearing. Although a claimant does not have a constitutional right to counsel at a Social Security disability hearing, he does have a statutory and regulatory right to be represented should he choose to obtain counsel. 42 U.S.C. § 406; 20 C.F.R. § 404.1705. The applicable statute and regulations state that when notifying a claimant of an adverse initial determination and his right to a hearing, the

Commissioner must notify him in writing of his option to obtain an attorney to represent him at the hearing, and of the availability of organizations which provide legal services free of charge to qualifying individuals. 42 U.S.C. §§ 406(c); 20 C.F.R. § 404.1706. Moreover, courts have held that at the hearing itself, the ALJ must ensure that the claimant is aware of his right to counsel. Lamay v. Comm'r of Social Sec., 562 F.3d 503, 507 (2d Cir. 2009) (citing cases and declining to adopt a specific litany which the ALJ must use in ensuring that the claimant understands his right to be represented by counsel); Richardson v. Astrue, No. 2:07 CV 17 DDN, 2008 WL 3982064, at *19 (E.D. Mo. Aug. 22, 2008).

A claimant may waive his right to proceed with a lawyer or representative, but for a waiver to be effective, "the claimant must be given sufficient information to enable him to decide whether to retain counsel, or whether to proceed pro se." Richardson, 2008 WL 3982064, at *19. Here, on three separate occasions prior to the hearing, Plaintiff received written notification of his right to be represented before the ALJ by counsel or a representative. And at the hearing, the ALJ told Plaintiff that he could have a lawyer if he wanted one, and asked Plaintiff if he wanted more time to get a lawyer to represent him.

Although the record does reflect some confusion on Plaintiff's part, the Court believes that the ALJ's findings that Plaintiff was adequately advised of his right to counsel and effectively waived that right are supported by the record. As with other findings, these findings are entitled to deference by the Court if they are supported by the record, even if the record would also support a contrary result. The Court's own reading of the record suggests that Plaintiff was more confused as to whether he was required to

have counsel than as to his right to have counsel. Plaintiff's statement, "If I can represent myself today, I would like to," supports the ALJ's findings. See Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990) (finding that the claimant knowingly waived his right to counsel, because he received a notice of his hearing clearly explaining his right to counsel, and his reply to the notice indicated his decision to proceed pro se, as well as his reasonable grasp of regulations and procedure involved); Stroud v. Barnhart, No. Civ. 04-35 PAMJGL, 2005 WL 679074, at *2 (D. Minn. March 22, 2005) (finding a valid waiver where the plaintiff received three notices about her right to counsel and expressly declined to act on this information; explaining that the Court in Wingert did not hold that a grasp of the regulations and procedures represented the minimal requirements for a knowing waiver of counsel).

**ALJ's Assessment of Plaintiff's Physical RFC**

Plaintiff argues that the ALJ's physical RFC is improper as it was not supported by any medical evidence of Plaintiff's functional capacity. Plaintiff also faults the ALJ for not addressing Dr. Little's report. The Commissioner argues that the ALJ's RFC is supported by the fact that Plaintiff was released to return to work after his June 2006 accident, laboratory and diagnostic tests revealed only mild to minimal results, Plaintiff was not taking any pain medication and sought minimal medical treatment, none of Plaintiff's treating physicians opined that Plaintiff was disabled or even had functional restrictions, and there was no evidence of significant physical deterioration since Plaintiff last worked. The Commissioner argues that the failure to discuss Dr. Little's report was at

most harmless error, as the ALJ's finding that Plaintiff had the severe impairments of residuals of infantile cerebral palsy, coronary artery disease, and degenerative disc disease of the lumbar spine was consistent with Dr. Little's notes. The Commissioner further contends that the ALJ properly relied in part on his own observations of Plaintiff at the hearing. Specifically addressing Plaintiff's argument that there was no physical RFC in the record by a medical source, the Commissioner argues that it was Plaintiff's burden to prove his RFC at step four of the sequential evaluation process and Plaintiff failed to meet this burden.

A disability claimant's RFC reflects what he can still do despite his limitations. 20 C.F.R. § 404.1545(a). The "'most important issue'" in a disability determination is whether the claimant has the RFC "to do the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." Forehand v. Barnhart, 364 F.3d 984, 988 (8th Cir. 2004) (citation omitted). The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

Although a claimant's RFC is determined at step four of the sequential evaluation process, where the burden of proof rests on the claimant, "the ALJ bears the primary responsibility for determining a claimant's" RFC. Id. at 1023. While an RFC is based on

all relevant evidence, it "remains a medical question" and "'some medical evidence must support the determination of the claimant's [RFC], and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" Id. (quoting Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001)); see also Cox v. Astrue, 495 F.3d 614, 620 (8th Cir. 2007).

The absence, however, of an explicit reference to work in close proximity to the description of the claimant's medically evaluated limitations does not make it impossible for the ALJ to ascertain the claimant's work-related limitations from that evaluation; such explicit language is unnecessary where the medical evaluation describes the claimant's functional limitations "with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment." Cox, 495 F.3d at 620 n.6 (holding that ALJ's determination that the plaintiff had the mental RFC for simple unskilled work with little contact with others was sufficiently supported by treating psychiatrist's diagnosis of only mild depressive disorder and a Global Access of Functioning of 65, even though psychiatrist did not explain how the plaintiff's condition affected work-related functioning); see also Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (finding that substantial evidence supported the ALJ's conclusion that the claimant had the RFC to perform light work, and thus her past work, where medical records indicated that she suffered only mild degenerative changes in her back condition, even though the medical evidence was silent with regard to work-related restrictions such as the length of time she could sit, stand, and walk, and amounts she could lift and carry; as it was the claimant's

burden to prove at step four that she could not cannot perform her past relevant work, her "failure to provide medical evidence with this information should not be held against the ALJ when there is medical evidence that supports the ALJ's decision").

Here, the Court believes that a close question is presented. It is true that as of the date of the hearing, the medical record indicated only conservative treatment for Plaintiff's physical impairments, and the absence of pain medication. Furthermore, Plaintiff testified that he felt he was able to return to his former work in early July 2006. But Dr. Little's medical notes from September 2007, which the ALJ did not address, show that Plaintiff's back, leg, and shoulder condition were at a point where he needed prescription pain medications.

Even if the Court were to conclude that the ALJ's RFC assessment was supported by substantial evidence, a problem would remain, because the ALJ's RFC does not match Plaintiff's description of his former work. Plaintiff reported that at his job at Hoods he occasionally lifted 100 pounds and frequently lifted 25 pounds, whereas the ALJ found that Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry ten pounds. The ALJ did not explain whether in finding that Plaintiff could perform his past work, the ALJ was comparing Plaintiff's RFC to the tasks of Plaintiff's past work as Plaintiff performed it or as it is generally performed. The Court notes that according to the Dictionary of Occupational Titles ("DOT"), while some "sales clerk (retail trade)" jobs do not require heavier lifting/carrying than the ALJ's RFC findings, all require frequent reaching, frequent handling, and frequent fingering, with "frequent" meaning from one-

third to two-thirds of the time.  DOT § 290.477-014.  But the ALJ made no findings with regard to Plaintiff's ability to perform these functions, which seems particularly significant here, where the record indicates that Plaintiff's right hand and fingers are deformed.

In sum, although the ALJ gave some valid reasons for not crediting the full extent of Plaintiff's allegations of disabling symptoms, the Court believes that the better course here is to reverse the ALJ's decision and remand the case for a medical assessment of Plaintiff's physical RFC, and for reconsideration of Plaintiff's application for benefits based upon the record as a whole, including the new evidence.  See Grogan v. Astrue, No. 1:07CV132 LMB, 2009 WL 877707, at *3 (E.D. March 26, 2009) (reversing ALJ's decision and remanding case where the record did not contain an opinion by any physician, treating or consulting, other than one discredited by the ALJ, regarding the plaintiff's ability to function in the workplace, and ALJ's determination that the plaintiff had the physical RFC to perform her past work was based on the extent to which the ALJ found the plaintiff's subjective complaints credible).

**ALJ's Development of the Record with regard to Mental Retardation**

Plaintiff also argues that the ALJ should have sent Plaintiff for IQ testing, given Plaintiff's history of receiving benefits on the basis of mental retardation and the indications of mental limitations in the record.  The Commissioner argues that the record was sufficiently developed on this matter as Plaintiff did not assert a mental impairment in his application or at the hearing, Plaintiff worked for 13 years with his current level of intellectual functioning and there was no showing of significant deterioration since he last

worked in July 2006, and none of the Plaintiff's physicians indicated that he was limited in his mental abilities; in fact, medical notes on July 5, 2006, indicated that Plaintiff had normal judgment and memory, and no barriers to learning.

A social security hearing is a non-adversarial proceeding, which requires the ALJ to fully and fairly develop the record. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Where, as here, the claimant appears without the benefit of a lawyer, the ALJ has a heightened duty to develop the record. Wingert, 894 F.2d at 298; Richardson, 2008 WL 3982064, at *19. The ALJ, however, is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). "Unfairness or prejudice resulting from an incomplete record – whether because of lack of counsel or lack of diligence on the ALJ's part – requires a remand." Highfill v. Bowen, 832 F.2d 112, 115 (8th Cir. 1988). The relevant inquiry thus is whether the plaintiff was prejudiced or treated unfairly by how the ALJ did or did not develop the record. Hutchings v. Astrue, No. 4:06CV1621 TIA, 2008 WL 4488906, at *9 (E.D. Mo. Sept. 29, 2008).

Here, although the matter is not free from doubt, the Court does not believe that remand would be warranted solely on the ground that the ALJ failed in his duty to request a mental evaluation of Plaintiff. "[A]n ALJ is not obligated 'to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir.2003) (quoting Pena v. Chater, 76 F.3d 906, 909 (8th Cir.1996)); see also Hensley v. Barnhart, 352 F.3d 353, 357

21

(8th Cir. 2003) (holding that the fact that the claimant has been prescribed antidepressants on at least one occasion was not enough to require the ALJ to inquire further into the condition by ordering a psychological evaluation).  Significant to the Court's resolution of this issue is the fact that Plaintiff had the mental capacity to perform his past work for 13 years.

However, inasmuch as this case shall be remanded pursuant to the above discussion regarding Plaintiff's physical RFC, the ALJ should ascertain on remand whether, in fact, Plaintiff suffers from mental retardation, and if so, to what extent.  The ALJ should then consider the combined effects of Plaintiff's ability to perform his past work or, if not, other work.  See Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir. 2000) (holding that the ALJ must consider "the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling"); Gibson v. Sec'y of HHS, 882 F.2d 329, 331 (8th Cir. 1989) ("[I]f a claimant suffers from a non-severe impairment, such as low intellectual functioning, and from one or more severe impairments, the combined effect of all the impairments must be considered in assessing a claimant's residual functional capacity.").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further development of the record and reconsideration of Plaintiff's application.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 14th day of September, 2009.